NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Edward C. WEISENBERGER, | |
| Plaintiff, | Civ. No. 09-4828 |
| v. | OPINION & ORDER |
| BT AMERICAS, INC., | |
| Defendant. | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Defendant's Motion to Dismiss [docket # 15]. The Court has reviewed the written submissions of the parties and heard oral argument. For the reasons given below, the motion is DENIED.

BACKGROUND

Plaintiff was a vice president and network engineer for Credit Suisse, a nonparty, for fourteen years, during which time he participated in Credit Suisse's defined pension benefit plan, a plan governed by ERISA. The pension plan had a "Rule of 65," whereby Plaintiff would become eligible for early retirement benefits when his age plus his years of service totaled 65. One of the features of Credit Suisse's early retirement program is that employees can opt to take a non-reduced lump sum distribution of their pension in lieu of monthly distributions. Plaintiff would have reached the "Rule of 65" milestone in December of 2008.

However, in 2007, Credit Suisse and British Telecommunications entered into an outsourcing agreement whereby British Telecommunications would provide networking and

1

communications services for Credit Suisse. Under the terms of the agreement, 175 Credit Suisse employees, including Plaintiff, were transferred from Credit Suisse to Defendant BT Americas, Inc—a subsidiary of British Telecommunications. The employees' change in job status was, essentially, a corporate rearrangement—their work locations, job duties and reporting relationships were the same before and after the transfer. Plaintiff continued to work at the same location in Princeton, New Jersey and had the same job duties as he did before the outsourcing agreement.

The agreement between Credit Suisse and British Telecommunications contained a provision concerning the compensation and benefits for transferred employees like Plaintiff. The agreement provided, in relevant part,

> that the total compensation package and scope of benefits contained in the employment offer for each Affected Employee will be, at a minimum, no less favourable and substantially similar to the existing total compensation for the Affected Employee . . . . Credit Suisse agrees that the Provider Group [British Telecommunications] shall not be required to provide a benefit to the Affected Employee where the Provider Group does not provide that benefit to other Provider Personnel . . . located in the same country. Where the Provider Group is not able to provide an existing benefit to an Affected Employee for this reason the Provider Group will enter into discussions with the Affected Employee to agree to any reasonable compensation or other arrangements with the employee to mitigate the loss of the benefit.

Plaintiff alleges that, as a result of the transfer, (1) he has lost the benefit of the "Rule of 65"—pushing back his retirement date—and (2) he has lost the benefit of the non-reduced lump sum distribution option. He further alleges that neither British Telecommunications nor BT Americas has made any effort either to communicate with him about his losses or to mitigate those losses.

Also relevant to the current motion, the agreement between British Telecommunications and Credit Suisse contains a forum selection clause which states, "The ordinary courts of the

City of Zurich shall have exclusive jurisdiction with regard to any dispute arising between the Parties out of or in connection with this Agreement . . . ."

Plaintiff brought this lawsuit to enforce the above-quoted provision of the contract as a third party beneficiary to the agreement between Credit Suisse and British Telecommunications.[1] Defendant has now moved to dismiss.

## ANALYSIS

I. Standard of Review

A Defendant may, in lieu of filing an answer, move to dismiss a Complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). By rule, a "claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Therefore, if a Complaint does not "show[] that the pleader is entitled to relief," it should be dismissed.

In order to show an entitlement to relief, a plaintiff must plead sufficient factual matter to enable a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As the Third Circuit has noted, this requires the Court to undertake a two-step analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50). At step one, the Court sets aside any legal conclusions and "recitals of elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. At step two, the Court accepts the remaining

---

[1] Defendant does not presently contest Plaintiff's standing to enforce the contract as a third party beneficiary.

allegations as true and assesses whether or not they support a reasonable inference that the defendant is liable. *Id.* Rather than alleging facts that are "'merely consistent with' a defendant's liability," the Complaint must allege facts that, if true, "give rise to an entitlement to relief." *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, an inference of liability is not reasonable—and thus dismissal is required—if the factual allegations in the complaint are more likely explained by lawful behavior than unlawful behavior. *Id.* at 1950.

In performing this analysis, the judge may only assess the plausibility of the plaintiff's legal claims in light of the facts alleged. The judge may not assess the plausibility of the alleged facts themselves. The Court must accept well-pleaded facts as true (*id.*), even if "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

## II. ERISA Preemption

The Supreme Court and U.S. Courts of Appeals have expounded at great length upon ERISA preemption, but it remains a murky area of the law. Section 514(a) of ERISA (codified at 29 U.S.C. § 1144(a)) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Supreme Court, in interpreting this section, has explained that "[a] law 'relates to' an employee benefit plan . . . if it has a *connection with* or a *reference to* such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983) (emphasis added). A state law has a "reference to" an ERISA plan if it explicitly refers to ERISA-regulated plans. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Since the claims at issue in the case at bar are brought under the general state law of contracts, they clearly do not have a "reference to"

employee benefit plans.  The question in this case is whether Plaintiff's contract claim "has a connection with" any ERISA-regulated plan.

When determining whether a particular claim has the kind of "connection with" an ERISA-regulated plan that would trigger preemption, courts must "look . . . to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  *Id.*  Specifically, the purpose of the pre-emption clause is "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."  *Id.* at 657.  Toward that purpose, the Supreme Court has held that ERISA preempts state laws that (1) "mandate[] employee benefit structures or their administration" (2) provide "alternative enforcement mechanisms," or (3) preclude uniform administration of the plan.  *Id.* at 658-60.  State laws that do not fit into one of these categories are usually safe from preemption.  For example, state laws of general application that simply exert "indirect economic influence" on ERISA plan administrators are not preempted.  *Id.* at 659-662.  State laws regulating the quality of medical care provided under an ERISA plan are also not preempted.  *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 279 (3d Cir. 2001).

None of these reasons counsel in favor of preemption in this case.  The first of these categories clearly is not at issue; contract law is very general in its application and does not affect the way any ERISA plans are set up or administered.  Nor does this lawsuit present a situation where a plaintiff is using state law as an alternative mechanism for bringing what should be an ERISA action.  Plaintiff is not bringing a lawsuit to enforce the terms of an ERISA plan that he has or had with Defendant.  Rather, he is trying to enforce a contractual arrangement that obligated Defendant to mitigate any loss of benefits that Plaintiff suffered as a result of switching employers from Credit Suisse to Defendant.  Finally, Plaintiff's lawsuit will not

preclude uniform administration of any ERISA plan across state lines. Plaintiff's lawsuit may require this Court to interpret the substance of the Credit Suisse ERISA plan in order to determine what kinds of benefits Plaintiff is owed, but there is nothing inherent in this process that suggests it will lead to disparate treatment of the Credit Suisse plan across state lines.

In arguing that Plaintiff's claims are preempted, Defendant relies principally upon *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc v. Nobers,* 968 F.2d 401 (3d Cir. 1992). In that case a group of pension beneficiaries sued their former employer for breach of contract, arguing that the employer's actions caused plaintiffs' pension benefits to be substantially lower than they would have been had the employer not breached the employment contract. *Id.* at 404. The Third Circuit held that the claim was preempted by ERISA. *Id.* at 406. However, *Nobers* is distinguishable from the case at bar. In *Nobers*, the plaintiffs argued that the defendant's breach of an employment contract had the incidental effect of reducing the amount of benefits that they could collect under an ERISA-governed plan. In this case, Plaintiff is not arguing that any ERISA-governed pension benefits were improperly reduced. Rather, he is seeking to enforce a contract that, by its own terms, obligates Defendant to compensate Plaintiff for losing his pension benefits. In other words, the losses at issue in this case are owed directly under the contract at issue, not under any ERISA plan.

*Nobers's* language to the effect that ERISA preempts every single action that requires a court to make reference to an ERISA plan for benefits-calculating purposes cannot be taken at face value. Such language is substantially broader than the rule the Supreme Court announced in *Travelers*. Furthermore, it is well accepted by now that mere reference to an ERISA plan for damages-calculating purposes does not trigger preemption under § 514(a). *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (citing *Wright v. Gen. Motors*

*Corp.,* 262 F.3d 610, 615 (6th Cir. 2001)); *Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1143-44 (9th Cir. 2002) (citing cases in several circuits).

Since Plaintiff's breach of contract claim does not interfere with the administration or enforcement of any ERISA-governed plan in accordance with federal law, it is not preempted.

### III. Venue and the Forum-Selection Clause

Under *M/S Bremen v. Zapata Off-Shore Co.*, a forum selection clause is presumptively valid, and the presumption can be rebutted only if the objecting party makes a "strong showing" that enforcement of the clause would be "unreasonable and unjust." 407 U.S. 1, 10 (1972). Plaintiff can make this showing by establishing "1) that . . . [the clause] is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *See Coastal Steel Corp. v. Tighman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (interpreting *Bremen* holding), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989).

In this case, enforcing the forum selection clause would be "so seriously inconvenient as to be unreasonable." It appears that all of the relevant witnesses and documents, as well as the site of the controversy, are located in New Jersey. *See Coppersweld Steel Co. v. Demag-Mannesmann-Bohler*, 578 F.2d 953, 965-55 (3d Cir. 1978) (holding forum selection clause requiring litigation in Germany unreasonable because the site of controversy, records, and witnesses were in the United States). This is an essentially local dispute between an American Plaintiff and an American Defendant. The fact that the contract was originally negotiated between a British Corporation and a Swiss Corporation does not alter this fact because there has been no showing that any of the relevant evidence in this case is located in Switzerland. Rather,

7

the principal dispute concerns Plaintiff's losses that flowed from his change in employment. Both before and after Plaintiff was transferred from Credit Suisse to BT Americas, he worked in Princeton, NJ. Therefore, venue is proper in this Court.

## CONCLUSION

For the foregoing reasons, it is ORDERED, this 19th day of March, 2010, that Defendant's Motion to Dismiss [15] is DENIED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.